No. 26-20193

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.

ROMELLO BURROS,
Defendant-Appellant.

Appeal from the United States District Court
for the Southern District of Texas

---

BRIEF FOR APPELLANT

---

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

SCOTT A. MARTIN
Assistant Federal Public Defender
Appellate Division Chief
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

**CERTIFICATE OF INTERESTED PERSONS**

United States v. Romello Burros,
No. 26-20193

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the in the outcome of this case.

1. Hon. Lee H. Rosenthal, Senior United States District Judge.
2. Hon. Christina A. Bryan, United States Magistrate Judge.
3. Mr. Romello Burros (a.k.a. Roemello Burros), Defendant-Appellant.
4. United States of America, Plaintiff-Appellee.
5. Counsel for Plaintiff-Appellee: United States Attorney Aaron Reitz; Former United States Attorneys Alamdar S. Hamdani and Nicholas J. Ganjei; Former Acting United States Attorney John G.E. Marck; and Assistant United States Attorneys Michael E. Day (in district court) and Carmen Castillo Mitchell (on appeal).
6. Counsel for Defendant-Appellant: Federal Public Defender Philip G. Gallagher; Former Federal Public Defender Marjorie A. Meyers; and Assistant Federal Public Defenders Heather M. Hughes (in district court) and Scott A. Martin (on appeal).

**CERTIFICATE OF INTERESTED PERSONS – (cont'd)**

These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

s/ Scott A. Martin
SCOTT A. MARTIN

## REQUEST FOR ORAL ARGUMENT

The defendant-appellant, Mr. Romello Burros ("Mr. Burros"), requests oral argument. The issue presented is whether the district court erred in denying his motion to dismiss the wire fraud conspiracy count for failing to state an offense under 18 U.S.C. §§ 1343 and 1349, because it did not allege a scheme whose object was to obtain (that is, gain or attain possession of) a victim's money or property. Oral argument would aid the Court in deciding this complex legal issue.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS ........................................................ i

REQUEST FOR ORAL ARGUMENT ........................................................ iii

TABLE OF CONTENTS ........................................................ iv

TABLE OF CITATIONS ........................................................ v

STATEMENT OF JURISDICTION ........................................................ 1

STATEMENT OF THE ISSUE ........................................................ 2

STATEMENT OF THE CASE ........................................................ 3

SUMMARY OF THE ARGUMENT ........................................................ 9

ARGUMENT ........................................................ 11

**ISSUE RESTATED**: The district court erred in denying Mr. Burros's motion to dismiss the wire fraud conspiracy count for failing to state an offense under 18 U.S.C. §§ 1343 and 1349, because it did not allege a scheme whose object was to obtain (that is, gain or attain possession of) a victim's money or property. ........................................................ 11

A. Standard of review ........................................................ 11

B. The wire fraud conspiracy count failed to allege a scheme whose object was to obtain a victim's money or property. ........................................................ 11

CONCLUSION ........................................................ 15

CERTIFICATE OF SERVICE ........................................................ 16

CERTIFICATE OF COMPLIANCE ........................................................ 17

# TABLE OF CITATIONS

**Page**

## CASES

*Ciminelli v. United States*, 598 U.S. 306 (2023) .................................................. 12

*Cleveland v. United States*, 531 U.S. 12 (2000) .................................................. 12

*Kelly v. United States*, 590 U.S. 391 (2020) ............................................. 11-12, 14

*Kousisis v. United States*, 605 U.S. 114 (2025) ............................ 7-8, 10-11, 13-14

*United States v. Baker*, 923 F.3d 390
(5th Cir. 2019) .......................................................................................... 14

*United States v. Thomas*, 724 F.3d 632
(5th Cir. 2013) .......................................................................................... 11

## STATUTES AND RULES

18 U.S.C. § 1343 ......................................................................................*passim*

18 U.S.C. § 1349 ......................................................................................*passim*

Fifth Cir. R. 28.2.1 ........................................................................................ i

## MISCELLANEOUS

Webster's Third New International Dictionary 1559 (2002) ................................ 12

## STATEMENT OF JURISDICTION

The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1291, as this is an appeal from a final judgment of conviction and sentence entered by the United States District Court for the Southern District of Texas. Jurisdiction also lies under 18 U.S.C. § 3742.

The judgment appealed from was entered on the docket on April 17, 2026. Mr. Burros timely filed his notice of appeal on that same date. *See* Fed. R. App. P. 4(b)(1)(A)(i).

## STATEMENT OF THE ISSUE

Whether the district court erred in denying Mr. Burros's motion to dismiss the wire fraud conspiracy count for failing to state an offense under 18 U.S.C. §§ 1343 and 1349, because it did not allege a scheme whose object was to obtain (that is, gain or attain possession of) a victim's money or property.[1]

[1] A similar issue is presented in *United States v. Cruise*, 5th Cir. No. 26-20063 (opening brief filed on July 10, 2026).

## STATEMENT OF THE CASE

On December 18, 2025, a federal grand jury in the Houston Division of the United States District Court for the Southern District of Texas returned a 27-count, multi-defendant second superseding indictment alleging that the defendants committed and/or conspired to commit wire fraud in a scheme to obtain bail bonds based on false statements of cosigners' income and financial assets. ROA.269-87. The introductory section stated:

> 1. In the Harris County criminal justice system, a defendant who is charged with a crime may be assigned a bail bond amount from a Judge. The defendant may either post this money directly to the court or may pay for the services of a bail bond company. In the case of the bail bond company, the defendant pays the bail bond company a premium, which is generally a percentage of the total bail bond amount set by the Judge of the court. The bail bond company in turn guarantees to the court that the amount set by the Judge will be paid if the defendant does not comply with the proceedings and rules of the court during the prosecution of the defendant.
>
> 2. Every bondsman, or individual who is the owner of the bail bonds company, is licensed in the State of Texas. Bondsmen can either obtain a license by showing the bail bond board that they have the assets required to guarantee the bail bond amount, or they are agents of an insurance company and are given authority to act on the insurance company's behalf.
>
> 3. The process of assessing risk for a bail bond often requires documentation of collateral, generally by documenting financial assets and liquidity, to include ownership of real estate and yearly income by third parties who agree to enter the contract between the defendant and the bail bonds company as an additional indemnified party, thereby accepting the financial obligations of paying the full bail bond amount set by the Judge in the event of forfeiture. This additional indemnified party is commonly referred to as a "co-signer" and signs a promissory

> note, which is a financial debt instrument.
>
> 4. When a third party co-signer enters into the contract between the defendant and bail bonds company, a defendant is subsequently able to put down less money, a percentage of the total bail bond amount set by the Judge of the court, rather than the full amount of the bond.

ROA.270-71.

This introductory section of the indictment also provided the following "overview of the fraudulent scheme":

> 5. AABLE Bail Bonds was a bail bonding company in Harris County, Texas, and the CEO of AABLE Bail Bonds was SHEBA MUHARIB (53).
>
> 6. MUHARIB (53), doing business as AABLE Bail Bonds, was an agent of Financial Casualty & Surety (FCS). Financial Casualty & Surety maintains offices in 33 states and is engaged in interstate commerce.
>
> 7. Any review process or underwriting conducted by Financial Casualty & Surety would require the electronic transfer of documents obtained by AABLE Bail Bonds or its representatives. Documents related to each surety bond, which are a matter of court record, would also be submitted to the Government via electronic communication.
>
> 8. AABLE Bail Bonds had a fiduciary duty to Financial Casualty & Surety to maintain documents related to each surety bond.
>
> 9. Person A, Person B, and others operated as employees of AABLE Bail Bonds.
>
> 10. Defendants below conspired with each other and with others, including at times Person A and Person B, to falsify and obtain falsified co-signer financial reports to qualify individuals, charged with criminal offenses, who would not otherwise qualify for the coverage necessary to meet the terms of their bond.

> 11. Defendants below conspired with each other and with others, including at times Person A and Person B, to recruit straw co-signers who represented they worked at companies or earned incomes in the falsified co-signer financial reports when in fact they did not work at the companies or earn the represented incomes. It was reasonably foreseeable that the falsified cosigner financial reports would be transmitted in interstate commerce wire communications as an attempt to show coverage necessary to meet the terms of the bonds.
>
> 12. The falsified co-signer financial reports were subsequently emailed or submitted via electronic communication, including but not limited to Bond-Pro, Inc, an electronic communications service/remote computing service provider located in Dahlonega, Georgia.
>
> 13. These fraudulent financial reports were relied upon by the Government and/or the insurance agency/agent to enter into a three-party agreement known as a surety bond.
>
> 14. By entering into the surety bond rather than having to pay the full amount of the bond to the Court, the defendants incurred a financial gain.
>
> 15. Through their fraudulent representations, the defendants intended to deprive victims, such as the Government and insurance companies, such as Financial Casualty & Surety, of money and property. The fraudulent representations made by the defendants caused a risk of harm to the insurance companies, through a greater risk that the defendants would default on their surety bonds.

ROA.271-73 (formatting altered).

In Count 26 (formerly Count 45 in the original and first superseding indictments, *see* ROA.53-54, 176-77), Mr. Burros was charged as follows:

> **COUNT 26**
> **CONSPIRACY TO COMMIT WIRE FRAUD**
>
> 48. The Grand Jury incorporates by reference paragraphs 1 through 15 as though fully restated and re-alleged herein.

> 49. Beginning in or about September 2020 and continuing through in or about June 2021, in the Houston Division of the Southern District of Texas, and elsewhere, the defendant,
>
> **ROEMELLO BURROS (51)**
>
> did knowingly, unlawfully, and willfully combine, conspire, confederate, and agree with others, known and unknown to the Grand Jury, to devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and for the purpose of executing such scheme and artifice, did transmit and cause to be transmitted, by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including emails, electronic payments, and other wire transmissions related to a scheme and artifice to defraud to obtain a bail bond for Roemello Burros (51), who was detained at the Harris County Jail.
>
> In violation of [18 U.S.C. §§] 1349 and 1343.

ROA.285-86 (formatting altered).

On January 29, 2026, Mr. Burros appeared before a magistrate judge and pleaded guilty to Count 26, pursuant to a written plea agreement in which he preserved his right to appeal the district court's earlier denial of his motion to dismiss. *See* ROA.1395-423 (hearing transcript); ROA.1511-25 (plea agreement).

The district court had denied the defendants' motions to dismiss in a written Memorandum and Opinion entered on June 20, 2025. *See* ROA.194-206. Mr. Burros and the 52 other defendants named in the original indictment collectively argued, in relevant part, that that the indictment failed to allege an offense under 18 U.S.C. §§ 1343 and 1349 because it did not allege a scheme whose object was to obtain a

victim's money or property.[2] ROA.138-39, 194, 198-201; *see also* ECF No. 696, at 6-8; ECF No. 736, at 6-7; ECF No. 1061, at 3, 7-19. Rejecting that argument, the court first wrote that "[t]he question is whether the indictment sufficiently alleges that the defendants intended to obtain bail bonds by paying less money than they would have paid had they submitted accurate financial information about cosigners." ROA.200. It then wrote:

> The superseding indictment alleges that by falsifying the cosigner information to obtain bail bonds, the defendants paid less than they should have. The object of the defendants' scheme is alleged to be not only to obtain bail bonds for incarcerated friends and family members, but also to deprive the government, and the insurance company, of the additional amounts of money that the defendants would have had to pay if they had submitted accurate information about third-party cosigners' finances and employment. *Kousisis*[3] makes it clear that "a defendant violates § 1343 by scheming to 'obtain' the victim's 'money or property,' regardless of whether he seeks to leave the victim economically worse off." Even if the defendants did not intend to forfeit the bonds, "the wire fraud statute is agnostic about economic loss." The superseding indictment alleges that the defendants obtained financial gain by providing false financial information about cosigners to secure the bail bonds. This allowed the defendants to avoid paying the full bond amount to the court, for less money than they would have paid if the cosigners' financial information had been accurate. This alleges a scheme that has as its object both securing the release of an incarcerated individual and paying less money than the defendants would have had to pay if they had submitted accurate cosigner financial information. The object of the alleged scheme was

---

[2] Each defendant was deemed to have "adopt[ed] the motions of the codefendants" in this case. ROA.194. This brief will cite the documents filed at district court docket entries 696, 736, and 1061 by reference to the district court ECF document number. The ROA provided to undersigned counsel did not include those documents, which were filed by codefendant Eugene Walker.

[3] *Kousisis v. United States*, 605 U.S. 114 (2025)

> not just to secure the release of a friend or family member; it was to do so at a price lowered as a result of the defendants' fraud. Even if discovery reveals, as the defendants assert that it will, . . . that none of the bonds were forfeited, a goal of the scheme was to have the defendants pay less for the bonds than they would have paid if they had provided accurate cosigner financial information. Under *Kousisis*, the object of the scheme is to obtain the money saved.
>
> The defendants argue that the superseding indictment fails because: (1) the government is not entitled to the full cash bond that it would have received had the defendants not entered into the bonds; and (2) the State of Texas has no property rights when it holds a defendant's cash bond. . . . At this juncture, the government has met its pleading burden to allege a scheme to defraud the government and the insurance companies. The government alleges that the defendants' scheme was not just to avoid paying the full bond amounts, but to use false statements about the cosigners' finances and employment to lower the amounts the defendants had to pay for the bonds, thereby decreasing the amounts the government received and increasing the insurance company's risk of default.

ROA.200-01 (formatting altered; internal citations omitted).

On March 25, 2026, district court accepted Mr. Burros's conditional guilty plea. ROA.312. And, on April 13, 2026, the court sentenced him to four months' imprisonment (to run consecutively to the undischarged term he was then serving as a result of his conviction in the 174th District Court, Harris County, Texas, in Cause Nos. 1681978 and 1712636), and a two-year term of supervised release. ROA.315-17, 1437-38. The court did not impose a fine, and it remitted the $100 special assessment. ROA.320, 1438.

The judgment was entered on April 17, 2026. ROA.315. On that same date, Mr. Burros timely filed his notice of appeal. ROA.321-22. This appeal followed.

## SUMMARY OF THE ARGUMENT

The district court erred in denying Mr. Burros's motion to dismiss the wire fraud conspiracy count for failing to state an offense under 18 U.S.C. §§ 1343 and 1349, because it did not allege a scheme whose object was to obtain a victim's money or property.

The indictment alleged a scheme "to defraud to obtain a bail bond," which is a legally binding "guarantee," made to the court by a bail bond company, that "the [bail] amount set by the Judge will be paid if the defendant does not comply with the proceedings and the rules of the court during the prosecution of the defendant." It explained generally that, "[w]hen a third party co-signer enters into the contract between the defendant and bail bonds company, a defendant is subsequently able to put down less money, a percentage of the total bail bond amount set by the Judge of the court, rather than the full amount of the bond." And it alleged specifically that, "[b]y entering into the surety bond rather than having to pay the full amount of the bond to the Court, the defendants incurred a financial gain."

The indictment's allegation that the defendants *saved money* by "entering into surety bond rather than having to pay the full amount of the bond to the Court" was insufficient to state an offense. The wire fraud statute requires a scheme to *obtain* money or property (that is, to gain or attain possession of it), not save money. *See*

18 U.S.C. § 1343; *Kousisis v. United States*, 605 U.S. 114, 122 (2025). Obtaining money and saving money are not the same thing.

The indictment also did not allege that Mr. Burros or any other defendant intended to forfeit a bail bond (*e.g.*, by fleeing of failing to appear in court), which is what would have triggered the obligation to pay the full bail amount to the court. The indictment thus failed to allege that the scheme's objective was to gain or attain possession of the money or property of *a victim* such as the bail bond company, the insurance company, a third-party cosigner, or the court. That matters because, as *Kousisis* made clear, "[o]btaining the victim's money or property must have been the aim . . . of the defendant's fraud." 605 U.S. at 122 (cleaned up).

This Court should reverse the district court's denial of Mr. Burros's motion to dismiss the wire fraud conspiracy count and vacate his conviction.

# ARGUMENT

**ISSUE RESTATED**: The district court erred in denying Mr. Burros's motion to dismiss the wire fraud conspiracy count for failing to state an offense under 18 U.S.C. §§ 1343 and 1349, because it did not allege a scheme whose object was to obtain (that is, gain or attain possession of) a victim's money or property.

## A. Standard of review.

Mr. Burros reserved the right to appeal the denial of his motion to dismiss the wire fraud conspiracy count in the indictment. ROA.1410-11, 1512. This Court's review is de novo. *See United States v. Thomas*, 724 F.3d 632, 640 (5th Cir. 2013). "In reviewing a challenge to an indictment alleging that it fails to state an offense, [this Court] is required to take the allegations of the indictment as true and to determine whether an offense has been stated." *Id.*

## B. The wire fraud conspiracy count failed to allege a scheme whose object was to obtain a victim's money or property.

To be guilty of federal wire fraud, a defendant must (1) "devis[e]" or "inten[d] to devise" a scheme (2) to "obtai[n] money or property" (3) "by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1343. "A defendant commits federal wire fraud . . . only if he both engaged in deception and had money or property as an object of his fraud." *Kousisis*, 605 U.S. at 121 (cleaned up).

The statute, like other federal fraud statutes, reaches only "traditional property interests." *Id.* at 121-22. "Schemes that target the exercise of the Government's regulatory power, for example, do not count." *Id.* at 122 (citing *Kelly v. United*

*States*, 590 U.S. 391, 400 (2020), and *Cleveland v. United States*, 531 U.S. 12, 23-24 (2000)). "Nor do schemes that seek to deprive another of 'intangible interests unconnected to property.'" *Id.* (quoting *Ciminelli v. United States*, 598 U.S. 306, 316 (2023)).

"[I]n all cases, because money or property must be an *object* of the defendant's fraud, the traditional property interest at issue 'must play more than some bit part in a scheme.'" *Id.* at 122 (quoting *Kelly*, 590 U.S. at 402). "Obtaining the victim's money or property must have been the 'aim,' not an 'incidental byproduct,' of the defendant's fraud." *Id.* (quoting *Kelly*, 590 U.S. at 402, 404). "To 'obtain' something means 'to gain or attain possession' of it, usually 'by some planned action or method.'" *Id.* (quoting Webster's Third New International Dictionary 1559 (2002)).

Here, the indictment alleged a scheme "to defraud to obtain a bail bond," ROA.286 (¶ 49), which is a legally binding "guarantee," made to the court by a bail bond company, that "the [bail] amount set by the Judge will be paid if the defendant does not comply with the proceedings and the rules of the court during the prosecution of the defendant." ROA.270-71 (¶¶ 1-2). The indictment explained generally that, "[w]hen a third party co-signer enters into the contract between the defendant and bail bonds company, a defendant is subsequently able to put down less money, a percentage of the total bail bond amount set by the Judge of the court, rather than the full amount of the bond." ROA.271 (¶ 4). And it alleged specifically

that, "[b]y entering into the surety bond rather than having to pay the full amount of the bond to the Court, the defendants incurred a financial gain." ROA.272 (¶ 14).

The indictment's allegation that the defendants *saved money* by "entering into surety bond rather than having to pay the full amount of the bond to the Court" was insufficient to state an offense. The wire fraud statute requires a scheme to *obtain* money or property (that is, to gain or attain possession of it), not save money. *See* 18 U.S.C. § 1343; *Kousisis*, 605 U.S. at 122. Obtaining money and saving money are not the same thing.

The indictment also did not allege that Mr. Burros or any other defendant intended to forfeit a bail bond (*e.g.*, by fleeing of failing to appear in court), which is what would have triggered the obligation to pay the full bail amount to the court. *See* ROA.271 (¶ 3) (discussing "the financial obligations of paying the full bail bond amount set by the Judge *in the event of forfeiture*" (italics added)). The indictment thus failed to allege that the scheme's objective was to gain or attain possession of the money or property of *a victim* such as the bail bond company, the insurance company, a third-party cosigner, or the court. That matters because, as *Kousisis* made clear, "[o]btaining the victim's money or property must have been the aim . . . of the defendant's fraud." 605 U.S. at 122 (cleaned up); *see also id*. at 124 ("[A] defendant violates § 1343 by scheming to obtain the victim's money or property, regardless of whether he seeks to leave the victim economically worse off.")

(cleaned up); *Kelly*, 590 U.S. at 398 ("The wire fraud statute . . . prohibits only deceptive schemes to deprive [the victim of] money or property.") (cleaned up; brackets in original); *United States v. Baker*, 923 F.3d 390, 405 (5th Cir. 2019) (affirming a jury instruction that "allowed for a [wire fraud conspiracy] conviction if Baker intended to *deceive the victims out of their money* for his own financial benefit" (emphasis added)).

In sum, the wire fraud conspiracy count failed to allege a scheme whose object was to obtain a victim's money or property. This Court should reverse the district court's denial of Mr. Burros's motion to dismiss that count for failing to state an offense and vacate his conviction.

## CONCLUSION

This Court should reverse the district court's denial of Mr. Burros's motion to dismiss the wire fraud conspiracy count and vacate his conviction.

Respectfully submitted,

PHILIP G. GALLAGHER
Federal Public Defender
Southern District of Texas

s/ Scott A. Martin
SCOTT A. MARTIN
Assistant Federal Public Defender
Appellate Division Chief
Attorneys for Appellant
440 Louisiana Street, Suite 1350
Houston, Texas 77002-1056
Telephone: (713) 718-4600

## CERTIFICATE OF SERVICE

All parties required to be served with copies of this document have been so served by filing via the Fifth Circuit ECF filing system.

s/ Scott A. Martin
SCOTT A. MARTIN

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 3,386 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word Office 365 (current version) software in Times New Roman 14-point font in text and Times New Roman 12-point font in footnotes.

3. This brief complies with the privacy redaction requirement of 5th Cir. R. 25.2.13 because the brief has been redacted of any personal data identifiers.

4. This brief complies with the electronic submission of 5th Cir. R. 25.2.1 because this brief is an exact copy of the paper document.

5. This brief is free of viruses because the brief has been scanned for viruses with the most recent version of a commercial virus scanning program.

s/ Scott A. Martin
SCOTT A. MARTIN